UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GEORGE AUSTIN, | ) | Civil No. 13cv2540 BAS(RBB) |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **DENYING PETITION FOR WRIT OF** |
| v. | ) | **HABEAS CORPUS [ECF NO. 1] AND** |
| | ) | **ORDER DENYING REQUEST FOR** |
| P.D. BRAZELTON, Warden, | ) | **JUDICIAL NOTICE [ECF NO. 17]** |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

Petitioner George Austin, a state prisoner proceeding pro se and in forma pauperis, filed a Petition for Writ of Habeas Corpus on October 21, 2013 [ECF Nos. 1, 2].  There, on several bases, he challenges his conviction for gang-related possession of a firearm by a felon.  (Pet. 6-9, ECF No. 1; Lodgment No. 1, Clerk's Tr. vol. 1, 122-23, Dec. 2, 2011 (abstract of judgment describing convictions).)  In claim one, he alleges that his right to a speedy trial was violated by a ten-day continuance granted to the prosecution.  (Pet. 6, ECF No. 1.)  Austin maintains, in claim two, that his right to due process was violated by the admission of the

1

1  gang expert's opinion testimony. (Id. at 7.)  In claim three,

2  Austin argues the collection of his DNA at the time of arrest was

3  an unreasonable search and seizure in violation of the Fourth

4  Amendment. (Id. at 8.)  Finally, his fourth claim is that his

5  trial was rendered fundamentally unfair by cumulative error. (Id.

6  at 9.)

7      Respondent P.D. Brazelton filed an Answer to Petition for Writ

8  of Habeas Corpus [ECF No. 6], along with a Notice of Lodgment [ECF

9  No. 7].  Austin filed a Traverse on April 4, 2014 [ECF No. 9].  On

10  April 25, 2014, Petitioner filed an ex parte Motion for Appointment

11  of Counsel [ECF No. 12], which was denied without prejudice [ECF

12  No. 15].  On August 8, 2014, the Court received from the Petitioner

13  a document entitled "Motion of Judicial Notice of Newly Discovered

14  Evidence of Actual Innocence Exculpatory DNA/Impeachment Evid."

15  [ECF No. 17], which was filed on the Court's docket as a Request

16  for Judicial Notice.  For the reasons discussed below, the Petition

17  should be **DENIED**, and the Request for Judicial Notice is **DENIED**.

18                    **I.   FACTUAL BACKGROUND**

19      On the morning of January 3, 2011, a San Diego police officer

20  noticed a Nissan Altima driving on El Cajon Boulevard with its

21  trunk open. (Lodgment No. 2, Rep.'s Appeal Tr. vol. 11, 1176-82,

22  1184, Oct. 3, 2011.)  He ran the license plate and discovered the

23  vehicle was a rental car. (Id. at 1181.)  There were three

24  individuals in the car. (Id. at 1183.)  The officer initiated a

25  stop, but the car continued driving for about two blocks. (Id.)

26      The car eventually stopped in a parking lot, the front

27  passenger door opened, and Petitioner got out. (Id. at 1185-86.)

28  He wore a white dress shirt. (Id. at 1186.)  Austin looked at the

police officer and took off running.  (Id.)  Another passenger, Aquantes Russell, got out of the rear driver's side and ran off in the same direction as Austin.  (Id. at 1189, 1221.)  Russell was wearing a dark dress shirt.  (Id. at 1186.)  The driver, Lawrence Cochran, stayed in the car.  (Id. at 1189-90, 1205.)

Other police units arrived and a perimeter was set up around the area to find the suspects who ran off.  (Id. at 1190.)  The driver was detained and the vehicle was searched.  (Id. at 1208-09.)  Police found a handgun holster and a loaded magazine for a nine-millimeter Makarov pistol on the floorboard near the driver's seat.  (Id. at 1211-12, 1215.)  Austin and Russell were discovered hiding in a dumpster several blocks from where the rental car was stopped.  (Id. at 1219-20.)  Both wore black t-shirts at the time of the apprehension.  (Lodgment No. 6, People v. Austin, No. D061046, slip op. at 3 (Cal. Ct. App. Feb. 20, 2013).)

A Makarov handgun was found later under a bush in a gated apartment complex between the location of the traffic stop and the dumpster where Austin was arrested.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 11, 1226; Lodgment No. 2, Rep.'s Appeal Tr. vol. 12, 1325, Oct. 4, 2011.)  The gun was loaded and its ammunition matched the rounds found in the magazine in the car.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 11, 1232-33.)  The firearm was not registered. (Id. at 1241.)  A member of the landscaping crew directed the police to the gun.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 12, 1327-29.)  His coworker saw a man discard a hooded sweatshirt as he ran through the complex toward an abandoned property.  (Id. at 1365-67, 1369.)  Another employee saw two African-American men running down the street as one of them took off his top and threw

1  it in a bush near the apartment complex.  (<u>Id.</u> at 1400-01.)  He

2  also observed one of the men crouching by a bush.  (<u>Id.</u> at 1471.)

3  A resident from the area noticed two black males walk by "real fast

4  real nervously."  (<u>Id.</u> at 1436-38.)  One of them threw a jacket

5  into a recycling bin.  (<u>Id.</u> at 1444.)  The witness recognized

6  Austin and Russell during a curbside identification process as the

7  men he had seen walking by.  (<u>Id.</u> at 1453.)

8      DNA testing of the handgun and holster was conducted by

9  criminalist Tamira Ballard from the San Diego Police Department

10  Crime Laboratory.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 13,

11  1582, 1586, Oct. 5, 2011.)  Ballard testified at trial that

12  Cochran, the driver of the car, was a contributor to the DNA found

13  on the holster and the handgun.  (<u>Id.</u> at 1595-1607.)  Austin was

14  excluded as a possible contributor to one of the swabs of the

15  firearm.  (<u>Id.</u> at 1597.)  A comparison of Austin's DNA to the

16  mixture from two other swabs of the gun was inconclusive.  (<u>Id.</u> at

17  1605.)

18      At trial, Austin stipulated that he had a previous felony

19  conviction.  (<u>Id.</u> at 1616.)  Detective Jon Brown from the San Diego

20  Police Department testified as the prosecution's gang expert about

21  the Skyline criminal street gang based in southeast San Diego.

22  (<u>Id.</u> at 1624-26, 1647-48.)  In Brown's expert opinion, Austin was

23  "without a doubt" an active member of the Skyline gang, and both

24  Cochran and Russell were active Skyline gang members.  (<u>Id.</u> at

25  1686, 1679-80.)  He also expressed an opinion that three gang

26  members riding in a car with a gun would all have the mutual right

27  to control it.  (<u>Id.</u> at 1688.)  Brown further testified that

28

1  fleeing from the car with a gun after a police stop would benefit

2  the gang.  (Id. at 1689-90.)

3                    **II.   PROCEDURAL BACKGROUND**

4      The information filed in San Diego Superior Court Case No.

5  SCD233495 on June 9, 2011, charged Austin[1] with three felony

6  counts:  (1) possession of a firearm by a felon in violation of

7  California Penal Code section 12021(a)(1); (2) illegal carrying of

8  a loaded firearm in public in violation of California Penal Code

9  section 12031(a)(1); and (3) possession of ammunition by a

10 prohibited person in violation of California Penal Code section

11 12316(b)(1).  (Lodgment No. 1, Clerk's Tr. vol. 1, 5-7, June 9,

12 2011 (information).)  The charging document also alleged that

13 Petitioner was an active gang member within the meaning of

14 California Penal Code section 12031(a)(2)(C) and had one prison

15 prior.  (Id. at 6-7.)

16     On September 26, 2011, a jury trial commenced on the charges

17 against Austin.  (Id. at 169-70, Sept. 26, 2011 (minutes).)  The

18 jury returned guilty verdicts on October 7, 2011, and found the

19 enhancement allegations to be true.  (Id. at 193-95, Oct. 7, 2011

20 (verdicts).)  Austin admitted his prison term priors.  (Id. at 191,

21 Oct. 7, 2011 (minutes).)  On November 29, 2011, Petitioner was

22 sentenced to eight months on count one and to one year on the

23 prison term priors.  (See id. at 197-98, Nov. 29, 2011 (minutes);

24 Lodgment No. 6, People v. Austin, No. D061046, slip op. at 2.)  His

25 sentence under count two was stayed, and the court imposed a two-

26

27 ─────────────────

28     [1] The information also charged Lawrence Cochran, the driver of
   the vehicle, as a codefendant.  (Lodgment No. 1, Clerk's Tr. vol.
   1, 5-7, June 9, 2011.)

1  year concurrent sentence for count three.[2]  (Lodgment No. 6, <u>People</u>

2  <u>v. Austin</u>, No. D061046, slip op. at 2.)

3       Austin filed a notice of appeal.  (Lodgment No. 1, Clerk's Tr.

4  vol. 1, 125, Dec. 8, 2011 (notice of appeal).)  On appeal, he

5  contended that he was prejudiced when the court granted the

6  prosecution a ten-day continuance and that the trial court

7  erroneously admitted certain gang expert testimony.  (Lodgment No.

8  3, Appellant's Opening Brief at 8, 22, <u>People v. Austin</u>, No.

9  D061046 (Cal. Ct. App. Feb. 20, 2013).)  Austin also challenged the

10 warrantless collection of DNA after his arrest as unconstitutional

11 and argued that the cumulative effect of these errors mandates

12 reversal.  (<u>Id.</u> at 34, 42.)  Finally, Petitioner asserted that

13 insufficient evidence supported the gang allegation in count two

14 and that the trial court committed a sentencing error by imposing a

15 two-year term for count three.  (<u>Id.</u> at 43, 45.)  The California

16 Court of Appeal rejected all of Austin's claims, except that it

17 modified and stayed the sentence under count three pursuant to

18 California Penal Code section 654.  (Lodgment No. 6, <u>People v.</u>

19 <u>Austin</u>, No. D061046, slip op. at 32.)

20      Austin filed a petition for review with the California Supreme

21 Court, raising claims of speedy trial violation, warrantless DNA

22 collection, and unsupported gang allegation.  (Lodgment No. 7,

23 Petition for Review at 9-19, <u>People v. Austin</u>, [No. S209489] (Cal.

24 May 3, 2013).)  The California Supreme Court issued a summary order

25 which stated:  "The petition for review is denied."  (<u>See</u> Lodgment

26

27      [2] The court sentenced Austin in this case, SCD233495, at the

28 same time it sentenced him in another matter in which he was also a
   defendant, SCD233723.  (<u>See</u> Lodgment No. 6, <u>People v. Austin</u>, No.
   D061046, slip op. at 2.)

1  No. 8, <u>People v. Austin</u>, No. S209489, order at 1[3] (Cal. May 3,

2  2013).)

3      While the direct appeal of his criminal conviction was

4  pending, Austin filed a petition for writ of habeas corpus in the

5  superior court, alleging that his conviction was based on

6  insufficient evidence and that admission of forensic evidence and

7  gang expert testimony violated his due process rights. (Lodgment

8  No. 9, <u>Austin v. Brazelton</u>, No. HC20989 (Cal. Super. Ct. filed June

9  21, 2012) (petition for writ of habeas corpus at 3a-3d).)

10 Petitioner also claimed the trial court abused its discretion by

11 denying Austin's motion for mistrial. (<u>Id.</u> at 4b-4c.)  The

12 superior court issued a reasoned decision denying the petition.

13 (Lodgment No. 10, <u>In re Austin</u>, No. HC20989, order at 1-4 (Cal.

14 Super. Ct. July 31, 2012).)

15     On August 27, 2012, Austin filed a habeas corpus petition in

16 the California Court of Appeal, raising the same claims. (Lodgment

17 No. 11, <u>Austin v. Brazelton</u>, No. HC20989 (Cal. Ct. App. filed Aug.

18 27, 2012) (petition for writ of habeas corpus).)  The appellate

19 court denied the petition.

20         In addition to the reasons stated in the opinion filed on
           February 20, 2013 in *People v. Austin* (D061046), to the
21         extent the petitioner attempts to raise an issue of juror
           misconduct, we determine his evidence of misconduct
22         (consisting of petitioner's unsigned declaration)
           insufficient. (See *People v. Hayes* (1999) 21 Cal. 4th
23         1211, 1256; *People v. Cox* (1991) 53 Cal.3d 618, 697.)  As
           such the trial court did not abuse its discretion in
24         failing to grant a new trial.

25 ─────────────

26     [3] Respondent's Notice of Lodging [ECF No. 7] describes
   Lodgment No. 8 as the "Order denying Petition for Review in
   California Supreme Court case number S209489." (<u>See</u> Notice Lodging
27 2, ECF No. 7.)  There are, however, two orders attached as Lodgment
   No. 8 –– the superior court's July 31, 2012 Order Denying Petition
28 for Writ of Habeas Corpus followed by the California Supreme
   Court's order denying Austin's petition for review.

1  (Lodgment No. 12, <u>In re Austin</u>, No. HC20989, order at 1 (Cal. Ct.

2  App. Feb. 22, 2013).)

3       On May 20, 2013, Austin filed a habeas petition with the

4  California Supreme Court, repeating the claims he raised on habeas

5  review in lower courts.  (Lodgment No. 13, <u>Austin v. Brazelton</u>, No.

6  S210876 (Cal. filed May 20, 2013) (petition for writ of habeas

7  corpus).)  The court summarily denied the petition, citing <u>People</u>

8  <u>v. Duvall</u>, 9 Cal. 4th 464, 474, 37 Cal. Rptr. 2d 259, 265, 886 P.2d

9  1252, 1258 (1995); <u>In re Dixon</u>, 41 Cal. 2d 756, 759, 264 P.2d 513,

10  514 (1953); and <u>In re Lindley</u>, 29 Cal. 2d 709, 723, 177 P.2d 918,

11  926-27 (1947).  (Lodgment No. 14, <u>In re Austin</u>, No. S210876, order

12  at 1 (Cal. July 10, 2013).)

13       Austin filed his Petition for Writ of Habeas Corpus in this

14  Court on October 21, 2013, raising four of the claims he pursued on

15  direct appeal or collateral review.  (Pet. 6-9, ECF No. 1.)

16                    **III.   STANDARD OF REVIEW**

17       The Antiterrorism and Effective Death Penalty Act ("AEDPA"),

18  28 U.S.C. § 2244, applies to all federal habeas petitions filed

19  after April 24, 1996.  <u>Woodford v. Garceau</u>, 538 U.S. 202, 204

20  (2003) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997)).  AEDPA

21  sets forth the scope of review for federal habeas corpus claims:

22           The Supreme Court, a Justice thereof, a circuit
         judge, or a district court shall entertain an application
23       for a writ of habeas corpus in behalf of a person in
         custody pursuant to the judgment of a State court only on
24       the ground that he is in custody in violation of the
         Constitution or laws or treaties of the United States.
25

26  28 U.S.C.A. § 2254(a) (West 2006); <u>see</u> <u>Reed v. Farley</u>, 512 U.S.

27  339, 347 (1994); <u>Hernandez v. Ylst</u>, 930 F.2d 714, 719 (9th Cir.

28

1  1991).  Because Austin's Petition was filed on October 29, 2012,

2  AEDPA applies to this case.  See Woodford, 538 U.S. at 204.

3      Section 2254(d) reads as follows:

4          An application for a writ of habeas corpus on behalf
           of a person in custody pursuant to the judgment of a
5          State court shall not be granted with respect to any
           claim that was adjudicated on the merits in State court
6          proceedings unless the adjudication of the claim--

7          (1) resulted in a decision that was contrary to, or
           involved an unreasonable application of, clearly
8          established Federal law, as determined by the
           Supreme Court of the United States; or
9
           (2) resulted in a decision that was based on an
10         unreasonable determination of the facts in
           light of the evidence presented in the State
11         court proceeding.

12  28 U.S.C.A. § 2254(d).

13      To present a cognizable federal habeas corpus claim, a state

14  prisoner must allege his conviction was obtained "in violation of

15  the Constitution or laws or treaties of the United States."  28

16  U.S.C.A. § 2254(a).  A petitioner must allege the state court

17  violated his federal constitutional rights.  Hernandez, 930 F.2d at

18  719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Mannhalt

19  v. Reed, 847 F.2d 576, 579 (9th Cir. 1988).

20      A federal district court does "not sit as a 'super' state

21  supreme court" with general supervisory authority over the proper

22  application of state law.  Smith v. McCotter, 786 F.2d 697, 700

23  (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780

24  (1990) (holding that federal habeas courts must respect a state

25  court's application of state law); Jackson, 921 F.2d at 885

26  (explaining that federal courts have no authority to review a

27  state's application of its law).  Federal courts may grant habeas

28  relief only to correct errors of federal constitutional magnitude.

9

1   Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989)

2   (stating that federal habeas courts are not concerned with errors

3   of state law "unless they rise to the level of a constitutional

4   violation").

5        The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003),

6   stated that "AEDPA does not require a federal habeas court to adopt

7   any one methodology in deciding the only question that matters

8   under § 2254(d)(1) -- whether a state court decision is contrary

9   to, or involved an unreasonable application of, clearly established

10  Federal law."  Id. at 71.  In other words, a federal court is not

11  required to review the state court decision de novo.  Id.  Rather,

12  a federal court can proceed directly to the reasonableness analysis

13  under § 2254(d)(1).  Id.

14       The "novelty in . . . § 2254(d)(1) is . . . the reference to

15  'Federal law, as determined by the Supreme Court of the United

16  States.'"  Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en

17  banc), rev'd on other grounds, 521 U.S. 320 (1997).  Section

18  2254(d)(1) "explicitly identifies only the Supreme Court as the

19  font of 'clearly established' rules."  Id.  "A state court decision

20  may not be overturned on habeas review, for example, because of a

21  conflict with Ninth Circuit-based law . . . ."  Moore v. Calderon,

22  108 F.3d 261, 264 (9th Cir. 1997).  "[A] writ may issue only when

23  the state court decision is 'contrary to, or involved an

24  unreasonable application of,' an authoritative decision of the

25  Supreme Court."  Id. (citing Childress v. Johnson, 103 F.3d 1221,

26  1224-26 (5th Cir. 1997); Baylor v. Estelle, 94 F.3d 1321, 1325 (9th

27  Cir. 1996)).

28

1    Furthermore, with respect to the factual findings of the trial

2 court, AEDPA provides:

> In a proceeding instituted by an application for a
> writ of habeas corpus by a person in custody pursuant to
> the judgment of a State court, a determination of a
> factual issue made by a State court shall be presumed to
> be correct.  The applicant shall have the burden of
> rebutting the presumption of correctness by clear and
> convincing evidence.

7 28 U.S.C.A. § 2254(e)(1).

8                    **IV.  DISCUSSION**

9 **A.  Right to Speedy Trial**

10    In his first claim for relief, Austin alleges that he was

11 denied his right to a speedy trial in violation of state and

12 federal law.  (Pet. 6, ECF No. 1.)  Petitioner states that the

13 information charging him was filed on June 9, 2011, and his

14 original trial date was August 2, 2011.  (Id.)  He claims the trial

15 court granted the prosecution several continuances over defense

16 objections, and the case was continued because "numerous required

17 witnesses," including a DNA expert, were not available.  (Id.)

18 Austin alleges that his trial started on September 26, 2011, forty-

19 six[4] days after the original August 2, 2011 date.  (Id.)

20 Respondent claims that the delay between Austin's arraignment on

21 June 13, 2011, and the commencement of trial on September 26, 2011,

22 was not presumptively prejudicial.  (Answer Attach. #1 Mem. P. & A.

23 10-11, ECF No. 6.)

24    In California, the right to a speedy trial is both

25 constitutional and statutory.  Cal. Const. art. I, § 15; Cal. Penal

26 Code § 1049.5 (West 2008); Cal. Penal Code § 1382 (West 2011).

27

28    [4] Petitioner is mistaken in his calculations:  There are
fifty-five calendar days between those two dates.

11                                          13cv2540 BAS(RBB)

Under the California Constitution, the right to a speedy trial is triggered by the filing of the felony complaint. See People v. Martinez, 22 Cal. 4th 750, 765, 94 Cal. Rptr. 2d 381, 392, 996 P.2d 32, 42 (2000). California statutes require the trial court to set a trial date within sixty days of the felony arraignment. See Cal. Penal Code §§ 1049.5, 1382. This period may be extended for good cause or by the defendant's waiver or consent. Id. § 1382.

Petitioner was arraigned on the criminal charges in this case on June 13, 2011, and the case was set for trial on August 2, 2011. (Lodgment No. 1, Clerk's Tr. vol. 1, 134, June 13, 2011 (minutes).) Petitioner had another criminal case pending at that time; he was also charged in San Diego Superior Court Case No. SCD233723, along with another individual, Keshawn Price, as a codefendant. (Lodgment No. 6, People v. Austin, No. D061046, slip op. at 4.) Both of Austin's criminal cases were on the same timeline and were assigned to the same courtroom for trial.[5] (See Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 286-87, Aug. 8, 2011.)

On August 2, 2011, the prosecution requested a continuance, and the trial was trailed over Austin's objection. (Lodgment No. 1, Clerk's Tr. vol. 1, 141, Aug. 2, 2011 (minutes).) The court held a scheduling hearing in all three cases on August 8, 2011. (Id. at 143, Aug. 8, 2011 (minutes); Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 286-87.) The court and all parties agreed that Friday, August 12, 2011, would mark the final day for starting the trial:

> The Court: All right. You want to state your basis for -- well, first let's agree on the timing. I think in chambers this morning all parties agreed that all cases

---

[5] A third criminal case, involving Keshawn Price alone, was also on the same "clock." (See Lodgment No. 6, People v. Austin, No. D061046, slip op. at 4.)

12

1   are running on the same timeline without a waiver and
    that today was the 56th day, which means that Friday is
2   the 60th day; is that correct?

3   Ms. Diaz:  Yes.

4   The Court:  Everyone agree?

5   Ms. Lacher:  Yes, Your Honor.

6   Mr. Roberts:  I agree, Your Honor.

7   Mr. Leahy:  Yes, Your Honor.

8   The Court:  Okay.  All parties agree.  All right.  So
    with that in mind, knowing that Friday is the 60th day, I
9   will hear your motion.

10  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 289.)

11      At the August 8, 2011 hearing, the prosecutor argued her

12  motion to continue the trial because of witness unavailability

13  issues.  (Id. at 289-293.)  Austin's counsel objected to any

14  continuance beyond August 12, 2011.  (Id. at 327.)  The court

15  observed that "in all three cases, time runs out on Friday.

16  Obviously if you have a defendant who's got two cases, one of them

17  has to start first.  So if the other one starts after the 60 days,

18  there's clearly good cause.  You can't do both cases at the same

19  time."  (Id. at 301.)  The court did not find good cause for a

20  continuance of the Austin-Cochran case, SCD233495, and proceeded

21  with a pretrial suppression motion in the case.  (Id. at 318-19.)

22  Because Austin was a defendant in two separate cases, the court

23  then considered which case would be tried first and determined that

24  the Case No. SCD233723, the Austin-Price case, would proceed first.

25  (Id. at 328.)  The court found good cause to trail Petitioner's

26  other criminal case, Case No. SCD233495 and the subject of this

27  habeas proceeding, because Austin and his counsel could not be in

28  two trials at the same time.  (Id. at 329-330.)

13

On September 14, 2011, jury deliberations began in Case No. SCD233723, and the court resumed pretrial proceedings in the case underlying this habeas petition. (Lodgment No. 2, Rep.'s Appeal Tr. vol. 6, 656, 665-67, Sept. 14, 2011.) On September 15, 2011, the trial court found that because the first trial had concluded, there was no longer good cause justifying a continuance of the trailing case. (Lodgment No. 2, Rep.'s Appeal Tr. vol. 7, 754-55, Sept. 15, 2011.) The prosecution requested a continuance until September 26, 2011, because Tammy Ballard, a DNA analyst, was on a preplanned vacation out of state from September 9-23, 2011. (Id. at 761.) The court heard sworn testimony from the prosecutor about her efforts to subpoena the witness, as well as defense objections. (Id. at 759-82.) The trial judge explained his reasoning for granting a continuance:

> This is a situation where the witness had been under subpoena before and it was not possible for [the prosecutor] or counsel or the defendant to know exactly when everyone would be available for this trial because we were doing another trial, which just -- well, it didn't really end. I mean, the guilt phase ended and the jury is still deliberating, but we still don't know what they're going to do, and we don't know if we're going to have to have the bifurcated trial on the priors. So everything has been in a state of flux.
>
> . . . .
>
> I don't find that there was any lack of due diligence on the part of the people. They just simply didn't know all the facts. I also find that the witness is out of the jurisdiction of the court and that despite counsel's objection to my ruling the way I did on the [suppression] motion, so long as that motion remains denied, which it is as I sit here now, she is a key witness in the trial, and I don't believe that continuing the matter for a short time will deprive the defendant of any constitutional right until that witness gets back.
>
> So I'm going to grant the motion for continuance based on a finding of good cause and let the appellate court evaluate my reasons and decide whether I did this rightly or wrongly. But I will continue the matter until

1    the 26th of September, which is basically a week of court
2    time from now -- a week and two days.

3  (Lodgment No. 2, Augment Rep.'s Appeal Tr. vol. 2, 46-47, Sept. 15,

4  2011.)  Thus, the court granted a ten-day continuance to the

5  prosecution, which Austin now challenges.  (Pet. 6, ECF No. 1.)

6       Petitioner presented this claim in a petition for review to

7  the California Supreme Court.  (Lodgment No. 7, Petition for Review

8  at 9-13, People v. Austin, [No. S209489].)  The California Supreme

9  Court denied it without comment.  (Lodgment No. 8, People v.

10 Austin, No. S209489, order at 1.)  Austin had raised the speedy

11 trial claim on direct review by the California Court of Appeal.

12 (Lodgment No. 3, Appellant's Opening Brief at 8, People v. Austin,

13 No. D061046.)  Consequently, this Court will look through the state

14 supreme court's silent denial to the appellate court opinion.

15 Ylst, 501 U.S. at 805.

16      The California Court of Appeal acknowledged that the right to

17 a speedy trial is a fundamental right under the United States and

18 California Constitutions.  (Lodgment No. 6, People v. Austin, No.

19 D061046, slip op. at 5 (citing Bailon v. Superior Court, 98 Cal.

20 App. 4th 1331, 1344, 120 Cal. Rptr. 2d 360, 369 (2002).)  The court

21 rejected Austin's claim that a ten-day continuance violated his

22 right to a speedy trial, holding that Austin failed to show

23 prejudice from the delay.  (Id. at 4-7.)  The appellate court

24 explained that, under California law, prejudice exists if a delay

25 impaired the ability to defend against a charged crime, such as

26 where the continuance results in "the unavailability of a witness,

27 the loss of evidence, or the impairment of a witness's memory."

28

1  (<u>Id.</u> at 5-6 (citing <u>People v. Lowe</u>, 40 Cal. 4th 937, 946 (Cal.

2  2007).)   The court held petitioner failed to make that showing.

3         Here, Austin claims he was prejudiced because the
          continuance allowed Ballard to testify for the
4         prosecution about DNA evidence, which linked Cochran to
          the nine-millimeter gun found by the police when they
5         arrested Austin.  In other words, the continuance allowed
          the prosecutor to present evidence that helped establish
6         Austin's guilt.  This does not constitute prejudice.

7  (<u>Id.</u> at 6.)

8         In his Petition, Austin contends that he was denied the right

9  to a speedy trial "in violation of state and federal law." (Pet.

10 6, ECF No. 1.)   To the extent Petitioner raises this claim on the

11 basis that his trial was held beyond the sixty-day time period

12 provided under California Penal Code section 1382, it must be

13 rejected.   Clearly established federal law provides that federal

14 habeas relief is not available for an alleged error in the

15 interpretation or application of state law.   <u>Estelle v. McGuire</u>,

16 502 U.S. 62, 67-68 (1991) (reemphasizing that federal habeas courts

17 may not reexamine state-court determinations of state-law

18 questions).

19        Austin's claim that his speedy trial rights were violated

20 under federal law likewise fails.  A speedy trial is a fundamental

21 right guaranteed the accused by the Sixth Amendment to the

22 Constitution and imposed on the states under the Due Process Clause

23 of the Fourteenth Amendment.   <u>See</u> <u>Klopfer v. North Carolina</u>, 386

24 U.S. 213, 222-23 (1967).  No per se rule has been devised to

25 determine whether the right to a speedy trial has been violated.

26        [Federal courts] do not establish procedural rules for
          the States, except when mandated by the Constitution.  We
27        find no constitutional basis for holding that the speedy
          trial right can be quantified into a specified number of
28        days or months.  The States, of course, are free to
          prescribe a reasonable period consistent with

16

constitutional standards, but our approach must be less precise.

Barker v. Wingo, 407 U.S. 514, 523 (1972).

The Supreme Court has stated that "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case . . . ." Id. at 522.  The courts analyze four factors to determine whether a defendant has been deprived of his speedy trial rights:  (1) the length of any delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) any resulting prejudice to the defendant.  Id. at 530; see Doggett v. United States, 505 U.S. 647, 651 (1992).

No single factor is either a necessary or sufficient condition for finding a speedy trial deprivation.  Barker, 407 U.S. at 533. Instead, the factors must be analyzed together with other relevant circumstances.  Id.  Deliberate delay attributable to the government designed to hamper the defense "weighs heavily against the prosecution," Vermont v. Brillon, 556 U.S. 81, 90 (2009) (quoting Barker, 407 U.S. at 531), while neutral reasons, such as court congestion, weigh less heavily.  Id.  "[D]elay caused by the defense weighs against the defendant . . . ."  Id.

The Supreme Court divided the first inquiry, the length of the delay, into two steps.  First, to trigger a speedy trial inquiry, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Doggett, 505 U.S. at 651-52 (citing Barker, 407 U.S. at 530-31).  "If this threshold is not met, the court does not proceed with the Barker factors."  United

17

States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993).  If the threshold showing is made, "the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief." Id.

The Supreme Court has observed that courts generally have found that delays approaching one year are presumptively prejudicial, which is sufficient to trigger the Barker inquiry. Doggett, 505 U.S. at 652 n.1.  The Ninth Circuit has described a six-month delay as a "borderline case" that warrants an inquiry into the remaining Barker factors.  See United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986) (citing United States v. Simmons, 536 F.2d 827 (9th Cir. 1976)).  More recently, it noted a general consensus among the courts of appeals that eight months constitutes the threshold minimum.  United States v. Gregory, 322 F.3d 1157, 1162 n.3 (9th Cir. 2003).  Under the Sixth Amendment, delay is measured from "the time of the indictment [or other charging document] to the time of trial."  United States v. Sears, Roebuck & Co., 877 F.2d 734, 739 (9th Cir. 1989).

If the delay exceeds this minimum threshold, the court must consider "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  Doggett, 505 U.S. at 652; see also Vermont v. Brillon, 556 U.S. at 88, 91-92 (discussing overall delay of nearly three years between arrest and trial and employing Barker factors to evaluate the reasons for delay); United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008) ("If the length of delay

18

1   is long enough to be considered presumptively prejudicial, an

2   inquiry into the other three factors is triggered.").

3       Where the prosecution proceeded with reasonable diligence, the

4   defendant must show specific prejudice for his speedy trial claim

5   to succeed.  See Doggett, 505 U.S. at 656; United States v.

6   Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993).  Prejudice is

7   assessed in the light of the interests that the speedy trial right

8   is designed to protect, including (1) preventing oppressive

9   pretrial incarceration; (2) minimizing anxiety and concern of the

10  accused; and (3) limiting the possibility that the defense will be

11  impaired.  Barker, 407 U.S. at 532.  Of these considerations, "the

12  most serious is the last, because the inability of a defendant [to]

13  adequately . . . prepare his case skews the fairness of the entire

14  system."  Id.

15      Austin cannot demonstrate that the delay between his

16  arraignment and the first day of trial was presumptively

17  prejudicial.  Doggett, 505 U.S. at 651–52.  He was arraigned on

18  June 13, 2011, and his trial began approximately three months later

19  on September 26, 2011.  This time period is far from the one-year

20  mark and does not approach the minimum threshold of eight months.

21  Id. at 652 n.1; United States v. Gregory, 322 F.3d at 1162 n.3.

22  Thus, the length of delay in Austin's case does not weigh in his

23  favor.

24      Petitioner also fails to show that the reason for the delay,

25  the second factor in Barker, 407 U.S. at 531, should be assigned

26  any great weight.  Barker explained that a deliberate delay

27  designed to hinder the defense should be weighed heavily against

28  the prosecution.

> A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.  Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

_Id._

In this case, the delay in bringing Austin to trial on the weapons charges (No. SCD233495) is attributable to the fact that he had another criminal case pending (No. SCD233723) that went to trial first.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 329-30.) At the hearing on August 8, 2011, the trial judge decided that Austin's other criminal case, Case No. SCD233723, would proceed to trial first and found good cause for the continuance of the weapons case because Austin and his counsel could not be in two different trials at once.  (_Id._)  After the first case was submitted to the jury, the trial court found good cause to continue the trial of the weapons case ten days because a key prosecution witness was unavailable.  (Lodgment No. 2, Augment Rep.'s Appeal Tr. vol. 2, 46-47.)  The court explained that the prosecutor was diligent and properly subpoenaed the witness, but nobody, including the court, could predict when Austin's first trial would be over and the second trial could start.  (_Id._)

The third factor in the _Barker_ analysis is whether the defendant asserted his right to a speedy trial.  At the hearing on August 8, 2011, Austin, through his trial counsel, would not waive the statutory time limit for proceeding to trial and objected to any continuance of the case.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 327.)  On September 15, 2011, he objected to a ten-day continuance, arguing that the prosecutor should have found a

20

1   different criminalist to retest DNA samples and testify at Austin's

2   trial.   (Lodgment No. 2, Rep.'s Appeal Tr. vol. 7, 775-79.)

3         [Austin's counsel]:  Mr. Austin was held to answer on
          this case on June the first.  We did a speeded up
4         arraignment on July the 13th, I believe, no excuse me it
          was June the 13th.  We did an arraignment on June the
5         13th, Mr. Austin did not waive time.  We set the case for
          trial for August the second.  August 2 was day 50 so as
6         of July the 13th when they knew that Mr. Austin wasn't
          waiving time, if they knew, if they meaning the DA, if
7         the DA knew by July 13 that they had a scheduling
          conflict with Ms. Ballard, they had from July 13 on to
8         get this sample retested with somebody who didn't have an
          up coming vacation to Maui, it's just that simple.

9
          The Court:  That would assume they knew when the trial
10        was going to go and if the witness would be unavailable,
          correct?
11
          [Defense counsel]:  They knew -- according to Ms. Diaz
12        Ms. Ballard has had this vacation scheduled since
          February.  Ms. Diaz has just recounted all of the lengthy
13        discourse between herself and Ms. Ballard.

14        The Court:  I'm just saying I was sent three cases.  If
          that case had gone first there wouldn't have been an
15        issue, correct?  The first date of her vacation was --

16        [Defense counsel]:  -- Your Honor.

17        The Court:  -- September 9.

18        [Defense counsel]:  -- I believe the DA controls which
          case goes first.
19
          The Court:  No, I made the decision as to which case goes
20        first.  I mean I was sent three cases.  My instructions
          from Judge Danielsen were you figure it out.
21
          [Defense counsel]:  Well, Your Honor, I'm not sure that
22        it was clear on the record who made the decision to
          proceed on the case ending in 723.  Now I may be
23        mistaken.

24        The Court:  Well I think it is pretty clear if I hadn't
          ordered that case to proceed it wouldn't have proceeded.
25
          [Defense counsel]:  My understanding is that the D.A.
26        elects which case goes first.

27        The Court:  Even over the Court's objection.

28        [Defense counsel]:  Your Honor, my understanding is that
          the D.A. is in the driver's seat.

                                 21                           13cv2540 BAS(RBB)

The Court:  Well, I think we have a difference of opinion and I think I'm in the driver's seat.  I get to decide which case goes first irrespective of counsel's wishes. I consider counsel's requests and then I rule, but there is only one judge in the courtroom.

(Id. at 776-78.)  Based on the record before this Court, Austin asserted his right to a speedy trial and satisfied the third Barker factor.

Because the delay in Austin's case was not presumptively prejudicial, Petitioner bears the burden of demonstrating actual prejudice from the trial continuance.  United States v. Aguirre, 994 F.2d at 1455 (recognizing that prejudice may be presumed from an excessively long delay between indictment and trial).  Under the Barker analysis, prejudice is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect."  Barker, 407 U.S. at 532.  The most significant interest is the defendant's ability to "adequately prepare his case."  Id.

On appeal, Petitioner claimed that the continuance allowed the prosecution to present DNA testimony by the criminalist.  The court of appeal rejected Austin's claim:  "'[T]he mere fact that evidence sufficient to establish the prosecutor's case was introduced against the defendant only after his speedy trial rights were violated could never be considered the requisite prejudice to justify reversal of the judgment.'"  (Lodgment No. 6, People v. Austin, No. D061046, slip op. at 6 (citing In re Chuong D., 135 Cal. App. 4th 1303, 1312 (2006).)

The conclusion that Austin suffered no prejudice was reasonable under federal law.  Petitioner does not explain how his defense of the criminal charges against him was impaired by the

brief delay in the proceedings.  Nor does he point to any loss of
potentially exculpatory evidence or witness testimony from the
continuance.  Although Austin was in custody during the delay, he
was also in custody and on trial defending against charges in
another criminal case.  See Jones v. Howes, No. 07-12958, 2010 WL
427998, at *22 (E.D. Mich. Jan. 28, 2010) ("[N]o prejudice arose
from petitioner's pretrial incarceration because even if he had not
been detained in this case, he would have been in custody for the
other armed-robbery case . . . .").  Because Austin was eventually
convicted of the charges, his three-month incarceration does not
outweigh the other considerations pointing to the reasonableness of
the delay.  See United States v. Lam, 251 F.3d 852, 860 (9th Cir.
2001) (noting that a fourteen and one-half month incarceration by
itself does not outweigh other factors where defendant eventually
pleaded guilty to the charges).

In his Traverse, Petitioner argues that the continuance
"prejudiced him by allowing the presentation of DNA evidence."
(Traverse 1, ECF No. 9.)  Austin asserts that the evidence was
inadmissible, the case against him was weak, and good cause did not
exist for the continuance.  (Id. at 1-2.)  As explained above, the
delay in Austin's criminal case was not presumptively prejudicial
and thus does not implicate federal speedy trial rights.  The
reason for the delay provides little support for his claim.
Although Petitioner objected, he fails to show actual prejudice
from the continuance.  On balance, the four Barker factors do not
weigh in Petitioner's favor.  Based on the foregoing, the court of
appeal's rejection of Austin's speedy trial claim was not contrary
to, or an unreasonable application of, clearly established law, nor

1  was it an unreasonable determination of the facts in light of the

2  evidence presented in the state court proceeding.  28 U.S.C.

3  § 2254(d).  Therefore, the Court recommends habeas relief be **DENIED**

4  as to claim one.

5  **B.  Gang Expert's Testimony**

6       In his second claim, Austin alleges that his constitutional

7  rights were violated when the trial court admitted gang expert

8  testimony.  (Pet. 7, ECF No. 1.)  He claims that the People, over

9  defense objection, presented opinion testimony from detective Brown

10 to prove that Austin was guilty of possession based on his

11 participation in a gang.  (<u>Id.</u>)  Petitioner argues that Brown

12 impermissibly opined on Austin's guilt, and absent this testimony,

13 the prosecution would not have been able to "prove that Petitioner

14 ever touched the gun or knew it was in the car."  (<u>Id.</u>)

15      Respondent contends that Austin's claim fails because the

16 erroneous admission of evidence cannot serve as a basis for federal

17 habeas relief.  (Answer Attach. #1 Mem. P. & A. 11, ECF No. 6.)

18 Respondent also argues that the admission of relevant evidence did

19 not violate Petitioner's due process rights.  (<u>Id.</u> at 12.)

20      1.  <u>Last reasoned decision</u>

21      Austin raised the claim regarding gang testimony on direct

22 review with the California Court of Appeal.  (Lodgment No. 3,

23 Appellant's Opening Brief at 8, <u>People v. Austin</u>, No. D061046.)

24 The claim was denied on the merits by the appellate court.

25 (Lodgment No. 6, <u>People v. Austin</u>, No. D061046, slip op. at 8.)

26 Austin failed to assert this claim in his petition for review with

27 the California Supreme Court.  (<u>See</u> Lodgment No. 7, Petition for

28 Review at 9-19, <u>People v. Austin</u>, No. S209489.)  He did, however,

raise this claim (along with claims of insufficiency of the
evidence for conviction, violation of due process based on the
admission of forensic evidence, and abuse of discretion by trial
court based on the denial of Austin's motion for mistrial) in a
petition for writ of habeas corpus with the California Supreme
Court.  (Lodgment No. 13, Austin v. Brazelton, No. S210876
(petition for writ of habeas corpus).)  The state court denied the
petition without comment but with a citation to People v. Duvall, 9
Cal. 4th 464, 474, 37 Cal. Rptr. 2d 259, 265, 886 P.2d 1252, 1258
(1995); In re Dixon, 41 Cal. 2d 756, 759, 264 P.2d 513, 514 (1953);
and In re Lindley, 29 Cal. 2d 709, 723, 177 P.2d 918, 926-27
(1947).  (Lodgment No. 14, In re Austin, No. S210876, order at 1.)
Citation to these cases indicates that the state supreme court
declined to reach the merits of Austin's claims because they were
procedurally barred.  See La Crosse v. Kernan, 244 F.3d 702, 704-05
(9th Cir. 2001).

    Under Duvall, a habeas corpus petition must not be based on
conclusory allegations but "should both (i) state fully and with
particularity the facts on which relief is sought, as well as (ii)
include copies of reasonably available documentary evidence
supporting the claim, including pertinent portions of trial
transcripts and affidavits." People v. Duvall, 9 Cal. 4th at 474,
37 Cal. Rptr. 2d at 265, 886 P.2d at 1258 (internal citations
omitted).  The citation to Duvall indicates the state supreme court
denied the petition based in part on Petitioner's failure to plead
a prima facie case for relief.  Cross v. Sisto, 676 F.3d 1172,
1176-77 (9th Cir. 2012).  The state supreme court also cited In re
Dixon, which held that the failure to raise a claim on direct

25

appeal constitutes a procedural bar to collateral consideration of the claim. See Washington v. Cambra, 208 F.3d 832, 833-34 (9th Cir. 2000) ("In Dixon, the California Supreme Court held that 'in the absence of special circumstances constituting an excuse for failure to employ [the] remedy [of direct review], the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.'") (citation omitted).

Finally, a citation to Lindley "stands for the California rule that a claim of insufficiency of evidence can only be considered on direct appeal, not in habeas proceedings." Carter v. Giurbino, 385 F.3d 1194, 1196 (9th Cir. 2004); see also Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986) (stating that Lindley "holds that the sufficiency of the evidence will not be reviewed on habeas . . . ."). The Ninth Circuit has determined that the Lindley rule is an adequate and independent state procedural ground. Carter, 385 F.3d at 1197-98; see also Warren v. Adams, 444 F. App'x 204, 206 (9th Cir. 2011).

If the state court found Petitioner's federal claim barred pursuant to an independent and adequate state rule, federal review of that claim is barred unless Petitioner can demonstrate "cause for the default and actual prejudice" or that "failure to consider claims will result in a fundamental miscarriage of justice." See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002). To invoke the adequate and independent grounds doctrine, the respondent must plead procedural default as an affirmative defense. Bennet v. Mueller, 322 F.3d 573, 585 (9th Cir. 2003). Here, Respondent does not argue a

procedural bar to this particular claim that is consistently
applied and independent of federal grounds for relief.  Thus, this
Court will not discuss procedural bar or whether the state rules
were adequate and independent.  See Vang v. Nevada, 329 F.3d 1069,
1073 (9th Cir. 2003) ("Generally, the state must assert the
procedural default as a defense to the petition before the district
court; otherwise the defense is waived.").

Additionally, the California Supreme Court's order denying
Austin's petition is ambiguous because the Court denied the
petition with citations to Duvall, Dixon, and Lindley, making it
unclear which of his four claims were denied because of Duvall and
which were denied because of Dixon.  When presented with an unclear
opinion from a state court, the Ninth Circuit has repeatedly held
that the petitioner's claims are not procedurally barred.  See
Valerio v. Crawford, 306 F.3d 742, 774 (9th Cir. 2002); Morales v.
Calderon, 85 F.3d 1387, 1392 (9th Cir. 1996).  If the state court
order is ambiguous, the federal court may proceed to the merits of
the claims.  Koerner v. Grigas, 328 F.3d 1039, 1051-52 (9th Cir.
2003).

When reviewing a state court decision, federal courts must
look to the last reasoned state court decision as the basis of the
judgment.  Polk v. Sandoval, 503 F.3d 903, 909 (9th Cir. 2007)
(citing Benson v. Terhune, 304 F.3d 874, 880 n.5 (9th Cir. 2002)).
The last state court to address the merits of Petitioner's claim
was the California Court of Appeal.  (See Lodgment No. 6, People v.
Austin, No. D061046, slip op. at 8.)  This Court reviews that
decision.  Ylst v. Nunnemaker, 501 U.S. at 806.

//

2.  <u>Admission of gang expert testimony</u>

At trial, the People called as a witness San Diego Police Officer Jon Brown, a detective assigned to the street gang unit. (Lodgment No. 2, Rep.'s Appeal Tr. vol. 13, 1624-25.)  The prosecutor asked, "In your opinion, if you had three gang members in a car all from the same gang and there was a gun present, would all the members in that car have the right to control that gun?" (<u>Id.</u> at 1688.)  Brown replied, "Yeah, absolutely." (<u>Id.</u>)  He went on to explain:

> In that hypothetical scenario, that would definitely be a gang-related crime.
>
> I've spoken to dozens of gang members and almost all of them will tell you if they get in cars with other gang members, they're going to know that there's a gun in that car.
>
> And there's a wide range of reasons why they want to know:  If somebody's on probation or parole and they know that police are going to stop them, they want to know "Do I need to take this gun and run because they're going to find it?"  "If I get in a confrontation with other gang members and I want to shoot somebody, where is the gun?"
>
> And it's not, "Oh, this is my gun."  It's everybody's gang—I mean, it's everybody's gun.  That's part of being a gang member.  You're all going to put in work together.  It's an equal opportunity set.
>
> So, therefore, like I said, everybody's going to be able to access that gun, and it's going to elevate their status just to do violent acts like that.

(<u>Id.</u> at 1688-89.)

Austin argues that admission of the gang expert testimony was prejudicial and violated his due process rights because Brown impermissibly opined that Petitioner committed the crime "by nature of his participation in the gang." (Pet. 7, ECF No. 1.)  In his Traverse, Petitioner asserts, "In this case, a weapon was found next to a dumpster and trial court allowed expert to testify

def[endant] was a gang member and when one gang member possessed a gun, every other member in the car knew about the gun and constructively possessed it." (Traverse 3, ECF No. 9.)

The California Court of Appeal denied Austin's claim, stating that the trial court did not err in admitting gang expert opinion because "Brown's testimony concerned the customs and habits of criminal street gangs and was sufficiently beyond common experience as to properly be the subject of expert witness testimony." (Lodgment No. 6, <u>People v. Austin</u>, No. D061046, slip op. at 8 (citing <u>People v. Vang</u>, 52 Cal. 4th 1038, 1044, 132 Cal. Rptr. 3d 373, 377, 262 P.3d 581, 584 (2011).) The court rejected Petitioner's argument that the expert testimony "concerned the ultimate issue of Austin's guilt." (<u>Id.</u> at 7.) The appellate court explained that the expert witness could express an opinion in response to hypothetical questions that were "'rooted in facts shown by the evidence.'" (<u>Id.</u> at 8 (quoting <u>Vang</u>, 52 Cal. 4th at 1045, 132 Cal. Rptr. 3d at 378, 262 P.3d at 585).)

"A federal habeas court . . . cannot review questions of state evidence law. . . . Even where it appears that evidence was erroneously admitted, a federal court will interfere only if it appears that its admission violated fundamental due process and the right to a fair trial." <u>Henry v. Kernan</u>, 197 F.3d 1021, 1031 (9th Cir. 1999). "[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief." <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991). "Evidence erroneously admitted warrants habeas relief only when it results in the denial of a fundamentally fair trial in violation of the right to due process." <u>Briceno v. Scribner</u>, 555

1   F.3d 1069, 1077 (9th Cir. 2009) (citing Estelle v. McGuire, 502

2   U.S. at 67–68).

3       There is no clearly established Supreme Court precedent

4   holding that the "admission of irrelevant or overtly prejudicial

5   evidence constitutes a due process violation sufficient to warrant

6   issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101

7   (9th Cir. 2009). Admission of evidence can violate due process

8   "only if there are no permissible inferences" the jury may draw

9   from the evidence admitted. Jammal, 926 F.2d at 920. Lay

10  witnesses are precluded from giving a direct opinion about a

11  defendant's guilt or innocence; however, an expert witness may

12  testify regarding an ultimate issue to be resolved by the jury.

13  Briceno v. Scribner, 555 F.3d at 1077; Moses v. Payne, 555 F.3d

14  742, 761 (9th Cir. 2009).

15      The state appellate court's rejection of Austin's claim

16  regarding gang testimony did not violate Petitioner's

17  constitutional rights. The Ninth Circuit in Moses held that there

18  is no clearly established constitutional prohibition on giving an

19  expert opinion on an ultimate issue. 555 F.3d at 761.

20      [I]n the absence of a Supreme Court decision that
    "squarely addresses the issue" in the case before the
21  state court, or establishes an applicable general
    principle that "clearly extends" to the case before us to
22  the extent required by the Supreme Court in its recent
    decisions, we cannot conclude that a state court's
23  adjudication of that issue resulted in a decision
    contrary to, or an unreasonable application of, clearly
24  established Supreme Court precedent.

25  Moses v. Payne, 555 F.3d at 760 (citing Wright v. Van Patten, 552

26  U.S. 120, 125–26 (2008); Panetti v. Quarterman, 551 U.S. 930, 953

27  (2007); Carey v. Musladin, 549 U.S. 70, 76 (2006)). The state

28  appellate court's affirmance of the trial court's decision to admit

Brown's expert testimony was not contrary to, or an unreasonable application of, Supreme Court precedent.  Accordingly, this claim should be **DENIED**.

**C.   Warrantless DNA Collection Upon Arrest**

In claim three, Petitioner argues that the warrantless collection of his DNA at the time of his arrest constituted a prohibited search and seizure under state and federal law.  (Pet. 8, ECF No. 1.)  Petitioner claims that the evidence was used at trial to connect him to the gun.  (Id.)  Austin states that the admission of the DNA evidence allowed the prosecution to argue that "Petitioner could have been [a] contributor to the DNA found on the handgun and that he personally handled the weapon."  (Id.)

Respondent argues that this claim is barred under Supreme Court precedent, Stone v. Powell, 428 U.S. 465 (1976), because Austin had an opportunity to fully litigate his Fourth Amendment claim.  (Answer Attach. #1 Mem. P. & A. 14, ECF No. 6.)  Respondent also notes that the United States Supreme Court has since held in Maryland v. King, 569 U.S. __, 133 S. Ct. 1958, 1970 (2013), that the collection of the DNA evidence at the time of arrest is constitutional under the Fourth Amendment.  (Id. at 15 n.2.)

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. at 494 (footnotes omitted).  "Under Stone, Fourth Amendment violations are generally not cognizable on federal habeas, but they are cognizable when the State has failed to provide the habeas petitioner 'an

1  opportunity for full and fair litigation of a Fourth Amendment
2  claim.'" <u>Wallace v. Kato</u>, 549 U.S. 384, 395 n.5 (2007) (quoting
3  <u>Stone</u>, 428 U.S. at 482).

4      <u>Stone</u> is a "categorical limitation on the applicability of
5  [F]ourth [A]mendment exclusionary rules in habeas corpus
6  proceedings." <u>Woolery v. Arave</u>, 8 F.3d 1325, 1328 (9th Cir. 1993).
7  The Ninth Circuit has explained that "[t]he relevant inquiry is
8  whether petitioner had the opportunity to litigate his claim, not
9  whether he did in fact do so or even whether the claim was
10  correctly decided." <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th
11  Cir. 1996); <u>see also</u> <u>Locks v. Sumner</u>, 703 F.2d 403, 408 (9th Cir.
12  1983).

13      Petitioner's Fourth Amendment claim was fully and fairly
14  litigated in state court.  Austin acknowledges that he moved to
15  suppress the DNA evidence.  (Pet. 8, ECF No. 1.)  Petitioner,
16  through his counsel, filed the motion to suppress pursuant to
17  California Penal Code section 1538.5.  (Lodgment No. 2, Rep.'s
18  Appeal Tr. vol. 4, 336.)  The trial court held a hearing on the
19  motion where both sides argued and presented witnesses.  (<u>Id.</u> at
20  337-63; <u>id.</u> vol. 5, 364-454, Aug. 9, 2011.)  The trial judge
21  conducted a meaningful inquiry and denied the motion.  (Lodgment
22  No. 2, Rep.'s Appeal Tr. vol. 5, 445-61.)  The court ruled that
23  "pending the decision by the California Supreme Court in a related
24  case that the collection and use of the DNA was valid."  (Pet. 8,
25  ECF No. 1.)

26      Petitioner's claim was also fully litigated on appeal.  Austin
27  argued to the California Court of Appeal that his Fourth Amendment
28  rights had been violated.  (Lodgment No. 3, Appellant's Opening

32

13cv2540 BAS(RBB)

Brief at 34-41, <u>People v. Austin</u>, No. D061046.)  The appellate court thoroughly analyzed the constitutionality of the collection of Austin's DNA evidence, devoting fourteen pages of its opinion to this claim, and determined that the trial court properly denied Austin's suppression motion.  (Lodgment No. 6, <u>People v. Austin</u>, No. D061046, slip op. at 9-22.)  Austin filed a petition for review with the California Supreme Court, raising the warrantless DNA collection claim.  (Lodgment No. 7, Petition for Review at 13-18, <u>People v. Austin</u>, No. S209489.)  The California Supreme Court summarily denied the petition.  (Lodgment No. 8, <u>People v. Austin</u>, No. S209489, order at 1.)  Austin had a fair opportunity to litigate his Fourth Amendment claim in state court; therefore, it is not cognizable in federal habeas proceedings.  Accordingly, the claim should be **DENIED**.

**D.  Cumulative Error**

In ground four of his Petition, Austin contends that he was denied a fair trial as a result of the cumulative effect of the errors asserted in claim one (trial continuance), claim two (gang expert testimony), and claim three (warrantless DNA collection). (Pet. 9, ECF No. 1.)  The court of appeal rejected Austin's first three claims and denied this claim:  "Because we conclude no other errors exist, this cumulative error argument necessarily fails." (Lodgment No. 6, <u>People v. Austin</u>, No. D061046, slip op. at 22.)

Respondent argues that cumulative error cannot serve as a basis for habeas relief, and in any case, Petitioner is not entitled to relief because his first three claims are without merit.  (Answer Attach. #1 Mem. P. & A. 15-16, ECF No. 6.) Respondent claims that although the Ninth Circuit in <u>Parle v.</u>

1   <u>Runnels</u>, 505 F.3d 992, 927 (9th Cir. 2007), interpreted <u>Chambers v.</u>

2   <u>Mississippi</u>, 410 U.S. 284 (1973), as establishing a clear rule

3   regarding cumulative error, the United States Supreme Court has

4   never stated that a doctrine of cumulative error can form a basis

5   for federal habeas relief. (<u>Id.</u> at 15.)  Respondent points to a

6   split of authority among the circuit courts on this issue, arguing

7   that the applicability of cumulative error to AEDPA cases has not

8   been clearly established.  (<u>Id.</u> at 16.)

9       In <u>Parle</u>, the Ninth Circuit wrote, "The Supreme Court has

10  clearly established that the combined effect of multiple trial

11  court errors violates due process where it renders the resulting

12  trial fundamentally unfair."  <u>Parle</u>, 505 F.3d at 927 (citing

13  <u>Chambers</u>, 410 U.S. at 298).  It stated that "[t]he cumulative

14  effect of multiple errors can violate due process even where no

15  single error rises to the level of a constitutional violation or

16  would independently warrant reversal."  <u>Id.</u>  Although a single

17  trial error may not be sufficiently prejudicial to warrant habeas

18  relief, "the cumulative effect of multiple errors may still

19  prejudice a defendant."  <u>United States v. Frederick</u>, 78 F.3d 1370,

20  1381 (9th Cir. 1996).  When faced with a number of errors at trial,

21  "'a balkanized, issue-by-issue harmless error review' is far less

22  effective than analyzing the overall effect of all the errors in

23  the context of the evidence introduced at trial against the

24  defendant."  <u>Id.</u> (quoting <u>United States v. Wallace</u>, 848 F.2d 1464,

25  1476 (9th Cir. 1988)).  "[W]here the government's case is weak, a

26  defendant is more likely to be prejudiced by the effect of

27  cumulative errors."  <u>Frederick</u>, 78 F.3d at 1381.

28

34

Federal habeas review applies only to clearly established federal law, as announced by the United States Supreme Court.  28 U.S.C. § 2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. 362, 379-82 (2000).  Circuit precedent may not be used to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that the Supreme Court has not announced."  <u>Marshall v. Rogers</u>, __ U.S. __, __, 133 S. Ct. 1446, 1450 (2013) (citations omitted).  "When analyzing whether federal law was clearly established, the 'only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to dicta) of the Supreme Court as of the time of the state court decision.'" <u>Cudjo v. Ayers</u>, 698 F.3d 752, 761 (9th Cir. 2012) (citations omitted).

Other courts have acknowledged the different circuit approaches to whether the cumulative error inquiry is clearly established federal law.

> [T]here is a split in the circuits on whether the need to conduct a cumulative-error analysis is clearly established federal law under § 2254(d)(1).  <u>Compare</u> <u>Williams v. Anderson</u>, 460 F.3d 789, 816 (6th Cir. 2006) ("[C]umulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."), <u>with</u> <u>Parle v. Runnels</u>, 505 F.3d 922, 928 (9th Cir. 2007) ("[T]he Supreme Court has clearly established that the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal." (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed.2d 431 (1974); <u>Chambers v. Mississippi</u>, 410 U.S. 284, 290 n.3, 298, 302–03, 93 S. Ct. 1038, 35 L. Ed.2d 297 (1973))), and <u>Morris v. Sec'y Dep't of Corr.</u>, 677 F.3d 1117, 1132 n.3 (11th Cir. 2012) (reserving judgment on the issue).

<u>Hooks v. Workman</u>, 689 F.3d 1148, 1194 n.24 (10th Cir. 2012).

1    Even Parle is not clear on the issue.  At one point the court

2 wrote, "Although we have never expressly stated that Chambers

3 clearly establishes the cumulative error doctrine, we have long

4 recognized the due process principle underlying Chambers.  Parle,

5 505 F.3d at 927 n.5.  The court also described Chambers as "the

6 seminal cumulative error case."  Id. at 934.  The Ninth Circuit

7 posits that "the Supreme Court has clearly established that the

8 combined effect of multiple trial errors may give rise to a due

9 process violation if it renders a trial fundamentally unfair, even

10 where each error considered individually would not require

11 reversal."  Id. at 928 (citing Donnelly v. DeChristoforo, 416 U.S.

12 637, 643 (1974); Chambers, 410 U.S. at 290 n.3, 298, 302-03).

13    A standard for evaluating cumulative error is imprecise.

14 "[C]laims under the cumulative error doctrine are sui generis."

15 United States v. Sepulveda, 15 F.3d 1161, 1196 (1st Cir. 1993).

16    A reviewing tribunal must consider each such claim
    against the background of the case as a whole, paying
17   particular weight to factors such as the nature and
    number of the errors committed; their interrelationship,
18   if any, and combined effect; how the [trial] court dealt
    with the errors as they arose (including the efficacy—or
19   lack of efficacy—of any remedial efforts); and the
    strength of the government's case.  The run of the trial
20   may also be important; a handful of miscues, in
    combination, may often pack a greater punch in a short
21   trial than in a much longer trial.

22 Id. (internal citation omitted); accord United States v. Valencia,

23 600 F.3d 389, 429 (5th Cir. 2010).

24    The flip side of the cumulative error coin is due process.

25 Parle and other cases relying on cumulative error for habeas relief

26 may be characterized as a due process analysis of trial errors

27 that, as a whole, deprived the defendant of a fair trial.  See,

28 e.g., Parle, 505 F.2d at 934.

36

> The Supreme Court has repeatedly stated that
> fundamentally unfair trials violate due process, see,
> e.g., Riggins v. Nevada, 504 U.S. 127, 149, 112 S. Ct.
> 1810, 118 L. Ed. 2d 479 (1992) (quoting Spencer v. Texas,
> 385 U.S. 554, 563-64, 87 S. Ct. 648, 17 L. Ed. 2d 606
> (1967)), and common sense dictates that cumulative errors
> can render trials fundamentally unfair. Additionally,
> the Supreme Court has expressly cumulated prejudice from
> distinct errors under the Due Process Clause. Chambers
> v. Mississippi, 410 U.S. 284, 298, 93 S. Ct. 1038, 35 L.
> Ed. 2d 297 (1973) . . . .

Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006).

Whether analyzed as a claim premised on cumulative error or an alleged due process violation, the result is the same. Despite disagreement about the availability of cumulative error as a ground for habeas relief, courts are in agreement that cumulative error exists only where the "'cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.'" Duckett v. Mullin, 306 F.3d 982, 992 (10th Cir. 2002) (quoting United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990)); see United States v. Larson, 460 F.3d 1200, 1217 (9th Cir. 2006) (rejecting cumulative error claim where the court "discovered no error" in the defendants' trial). "[A]s the term 'cumulative' suggests, '[c]umulative-error analysis applies where there are two or more actual errors. It does not apply . . . to the cumulative effect of non-errors.'" Hooks, 689 F.3d at 1194-95 (declining to apply the cumulative error analysis because petitioner's trial had "at most" one error).

Austin is not entitled to relief on this claim because there were no constitutional errors implicating his due process rights. See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) ("Because there is no single constitutional error in this case,

37

13cv2540 BAS(RBB)

there is nothing to accumulate to the level of a constitutional violation."); cf. Parle, 555 F.3d at 928 ("If the evidence of guilt is otherwise overwhelming, the errors are considered 'harmless' and the conviction will generally be affirmed."). Accordingly, the state courts' denial of Petitioner's cumulative error claim was not objectively unreasonable. Therefore, the claim should be **DENIED**.

**E.  Austin's Request for Judicial Notice**

After the briefing on his habeas petition was completed, Austin submitted a request for judicial notice, asking the Court to take notice of "newly discovered" exculpatory evidence [ECF No. 17]. His submission contains the first page of a letter from Gary Roberts, his trial counsel, dated April 11, 2014, discussing discovery that Austin's attorney located in his trial files. (Req. Judicial Notice Ex. A, at 6, ECF No. 17.) Austin also includes a copy of a consultation report from Human Identification Technologies dated September 24, 2011, and addressed to Petitioner's trial counsel. (Id. Ex. B, at 8.) Petitioner argues that the report excludes him as a possible DNA contributor. (Req. Judicial Notice 2, ECF No. 17.) Austin acknowledges that the report sent to his attorney dates back to 2011, but Petitioner argues that he was denied access to it at the time of trial. (Id. at 2-3.) Petitioner claims that the case against him was weak and that the prosecution was allowed to introduce misleading DNA evidence. (Id. at 1-2.)

Under Federal Rule of Evidence 201(b), "a court may take judicial notice of 'matters of public record.'" Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (quoting Mack v. S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986)). In addition,

a court has authority to take judicial notice of a fact "not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); see also Lee, 250 F.3d at 689–90.

Here, none of the items Austin submitted is judicially noticeable.  A letter from his trial counsel and a forensic consultation report are not matters of public record because they are not "made publicly available by government entities."  See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  These items contain facts subject to reasonable dispute, and their authenticity and accuracy have not been tested.  See Fed. R. Evid. 201(b).  The information contained in the DNA testing report is not "generally known facts."  Id.; see 21B Wright & Miller, Federal Practice and Procedure § 5106.1 (2d ed. 2011) ("If the source can only be used through an intermediary such as an expert witness or an interpreter, the court does not really rely on the source but on the intermediary.").  Because the submitted documents and their contents are not proper subjects for judicial notice, the Court denies Austin's request.

Even if the additional evidence and arguments raised by Petitioner were properly before the Court, he would not be entitled to relief.  Austin attempts to advance an untimely claim of actual innocence.  He must show that, in light of all the evidence, including evidence not introduced at trial or evidence available only after trial, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable

doubt." <u>Schlup v. Delo</u>, 513 U.S. 298, 327-28 (1995).  This
requires "a stronger showing than that needed to establish
prejudice."  <u>Id.</u>  "To be credible, [an actual innocence] claim
requires petitioner to support his allegations of constitutional
error with new reliable evidence--whether it be exculpatory
scientific evidence, trustworthy eyewitness accounts, or critical
physical evidence--that was not presented at trial."  <u>Id.</u> at 324.

Austin cannot demonstrate that his submission constitutes "new
. . . evidence . . . that was not presented at trial."  <u>Schlup</u>, 513
U.S. at 324.  Petitioner argues that the DNA report sent to him by
his trial counsel "completely" excludes Austin as a possible
contributor.  (Req. Judicial Notice 1-2, ECF No. 17.)  The one page
of the report attached to the request for Judicial Notice discusses
testing of one swab collected from the surface of the gun.  (<u>Id.</u>
Ex. A, at 8.)  The summary of findings indicates that Austin was
excluded as a contributor for this swab.  (<u>Id.</u>)  This information
is consistent with the evidence presented at Petitioner's trial.

The DNA testing introduced at trial showed that Austin was not
a contributor to one of the swabs.  (Lodgment No. 2, Rep.'s Appeal
Tr. vol. 13, 1597.)  The appellate court noted this fact:  "A
comparison of Austin's DNA to [the mixtures found on the holster
and the handgun] was inconclusive.  He was, however, excluded as a
possible contributor to one of the swabs tested."  (Lodgment No. 6,
<u>People v. Austin</u>, No. D061046, slip op. at 4.)  Because this fact
was made known to the jury and discussed by the court of appeal,
the evidence excluding Austin as a contributor is not newly
discovered or newly presented.

40

Additionally, assuming the Human Identification Technologies report constituted new evidence, Petitioner cannot show that reasonable jurors would find Austin not guilty in light of the complete record.  Lee v. Lampert, 653 F.3d 929, 945 (9th Cir. 2011) (citing House v. Bell, 547 U.S. 518, 538 (2006)).  Substantial evidence of Petitioner's guilt was introduced at trial.  The jury heard that Austin was riding in a car with two active gang members, and he ran away from the police when they initiated a traffic stop. (Lodgment No. 6, People v. Austin, No. D061046, slip op. at 2-4.) A witness identified Austin as one of two males walking nervously in the area.  (Id. at 3.)  Police found a discarded loaded handgun near the location where the stop occurred.  (Id.)  A search of the vehicle uncovered a holster and a loaded magazine matching the handgun.  (Id.)  Testimony regarding the DNA testing of the gun and holster was introduced at trial.  The driver of the car was a major contributor to the DNA mixtures found.  (Id.)  The jury heard that a comparison of Austin's DNA was inconclusive and that he was excluded as a DNA contributor to one of the DNA swabs.  (See id. at 4.)  Nonetheless, gang expert testimony explained that gang members riding in a car with a gun would all have the right to control it. (See id.)

Given the strong record of Austin's culpability, the fact that Petitioner's DNA was not found on one of the swabs did not impact the jury's decision.  Thus, Petitioner cannot establish that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the report from Human Identification Technologies.  See Schlup, 513 U.S. at 327-28.

1    For all these reasons, Petitioner's Request for Judicial

2  Notice is **DENIED** [ECF No. 17].

3                          **V. CONCLUSION**

4    The Court **DENIES** Petitioner's Request for Judicial Notice [ECF

5  No. 17].  In addition, the Court submits this Report and

6  Recommendation to United States District Judge Cynthia Bashant

7  under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United

8  States District Court for the Southern District of California.  For

9  the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the

10 district court issue an Order (1) approving and adopting this

11 Report and Recommendation and (2) directing that a judgment be

12 entered denying the Petition.

13    **IT IS ORDERED** that no later than May 29, 2015, any party to

14 this action may file written objections with the Court and serve a

15 copy on all parties. The document should be captioned "Objections

16 to Report and Recommendation."

17    **IT IS FURTHER ORDERED** that any reply to the objections shall

18 be filed with the Court and served on all parties no later than

19 June 12, 2015.  The parties are advised that failure to file

20 objections within the specified time may waive the right to raise

21 those objections on appeal of the Court's order.  See <u>Turner v.</u>

22 <u>Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951

23 F.2d 1153, 1156 (9th Cir. 1991).

24    **IT IS SO ORDERED.**

25 DATED: April 30, 2015

                                     Ruben B. Brooks
26                                   United States Magistrate Judge

27

28 cc:  Judge Bashant
        All parties

I:\Chambers Brooks\CASES\HABEAS\AUSTIN2540\R&R v. 3.wpd        42                    13cv2540 BAS(RBB)